## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LIDA GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) 19-cv-00607-EEF-MLH |
| PATRICIA WHITE, ABEL MOSLEY, THE | ) |
| CHARLEY & ETHER MOSLEY CORPORATION, | ) *Jury Trial Demanded* |
| and INSURANCE COMPANIES 1-10, | ) |
| | ) |
| Defendants. | ) |

## SECOND AMENDED COMPLAINT

## I.    INTRODUCTION

1.    Plaintiff Lida Mosley Green lives in DeSoto Parish, and is an elder with dementia.

2.    Defendants Patricia Mosley White and Abel Mosley are family members of Ms. Green. They manage two corporations that have control over the Mosley family's land. Ms. Green owns a percentage of each corporation.

3.    As a result, Ms. Green is entitled to receive periodic checks that are her share of profits from use of the family land's oil and timber resources.

4.    But in recent years, Defendants have been forging Ms. Green's name on the endorsement line of her checks, and then depositing the money into a Chase Bank account they control.

5.    Ms. Green's representatives discovered this scheme in 2018, after obtaining copies of the stolen, cancelled checks from the natural resource companies that issued them.

6.    In September 2018, a Chase Bank investigation confirmed the fraud, determining that "Ms. Patricia Mosley White deposited checks made payable [to] Ms. Lida Green into an account that Ms. Patricia Mosley White is a signer on."

7.    Now, Ms. Green seeks compensation and accountability for Defendants' theft, fraud, and breaches of fiduciary duty.

1

## II.      JURISDICTION

8.       This Court has jurisdiction over this matter under diversity jurisdiction.

9.       The Plaintiff is domiciled in Louisiana, and all Defendants are domiciled in Texas.

10.       The amount in controversy, including attorneys' fees, treble damages for fraud and LUPTA violations, and special damages, is greater than $75,000.

11.       The venue is proper in the Western District of Louisiana under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in DeSoto Parish, Louisiana situated in the Western District of Louisiana.

## III.      THE PARTIES

*Plaintiff*

12.       Plaintiff **Lida Mosley Green** is of suitable age to file this suit. At all relevant time during this suit, Plaintiff was a resident of DeSoto Parish, Louisiana.

*Defendants*

13.       Defendant **Patricia Mosley White** is a resident of Texas. She is a manager and officer of the Family Entities.

14.       Defendant **Abel Mosley** is a resident of Texas. He is a manager and officer of the Family Entities.

15.       Defendant **Charley & Ether Mosley Corporation** (the "Corporation") is a Texas corporation, with a File Number of 0801406165. Its registered agent is Patricia M. White, with an office and mailing address of 9923 Wiltshire Way, Houston TX 77089. The Corporation's principal place of business is Houston, Texas.

16.       Plaintiff is a partial owner of the Corporation.

17.       Defendants **ABC Insurance Companies** are as yet unknown insurance agencies doing business in this State who provide or provided insurance that covered Patricia White and Abel Mosley against the kinds of claims pled herein.

2

18.

## IV.    FACTS

**A.  Plaintiff owns part of the Family Entities that manage the Mosley Family land.**

19.     Charley and Lizzie Mosley were farmers in north Louisiana at beginning of the 20th Century.

20.     Charley and Lizzie had several children, including a son, Charley Mosley, sometimes spelled 'Charlie,' who is the Plaintiff's father.

21.     Charlie/Charley was married to Ether D. Mosley. They had 13 children (Plaintiff Lida Mosley Green is one of those) and more than 40 grandchildren. Plaintiff's daughter, and power-of-attorney holder, Joyce Richardson is one of their grandchildren.

22.     From 1901 to 1904, Charley and Lizzie Mosley accumulated approximately 300 acres of land in DeSoto Parish, Louisiana.

23.     The land is used for timber, oil, and gas production.

24.     To manage the family property, keep it together, and fairly apportion its profits, the Mosley family set up two corporate entities. (The "Family Entities.")

25.     The first of the two entities is the Lizzie and Charlie Mosley, L.L.C., ( the "LLC") a Louisiana limited liability company with a mailing address of 9923 Wiltshire Way, Houston, TX 77089.

26.     The LLC's managers include Abel Mosely and Patricia White.

27.     Plaintiff Lida Green owns approximately 2.5% of the LLC.

28.     The second is The Charley & Ether Mosley Corporation, a Texas corporation. (The "Corporation".)

29.     Patricia White and Abel Mosley are officers of the Corporation.

30.     Plaintiff Lida Green owns part of the Corporation.

31.     The family entities have received money from companies that have rights to use the land's natural resources, including Indigo Minerals, EP Energy, Walsh Timber Company, and Covey

Park Oil.

**B. Defendants have stolen checks from Plaintiff by forging her signature and depositing them.**

32.    Plaintiff Lida Green has dementia. She is cared for by her biological son Dwight (who was legally adopted by her parents as a baby) and her daughter Joyce Richardson.

33.    Dwight takes care of her day-to-day needs, and Joyce manages her other affairs. Joyce is the sole holder of power of attorney for Lida Green.

34.    Defendants Pat White and Abel Mosley manage the affairs of the Family Entities.

35.    Pat and Abel are responsible for receiving income from the various companies that use the land's natural resources, and distributing checks to the various family members who own parts of the Family Entities.

36.    Plaintiff's daughter Joyce noticed that her mother wasn't receiving her checks properly.

37.    So Joyce investigated the missing checks by contacting some of the natural resource companies that use the family land.

38.    Two of the natural resource companies, El Paso E&P Company, L.P. and Indigo, sent Joyce copies of checks made out to Ms. Green that had been deposited and returned to the companies.

39.    Joyce found that someone had been intercepting checks made out to Lida Green, forging Ms. Green's name, and depositing them.

40.    She discovered that this person was Defendant Pat White.

41.    Most of the checks were deposited into an unknown Chase Bank account.

42.    In at least one case, Pat White gave Ms. Green's checks to a third party. For example, one was deposited at the Kickapoo Corner store.

43.    Some of the checks, in addition to Ms. Green's forged signature, also had the name "P. White" or "Patricia Mosely White."

44.    Defendant Patricia White has never had authority to sign for Lida Green on checks.

45.    Plaintiff's representatives asked Chase Bank to do an investigation into the stolen checks.

46.     On September 19, 2018, Chase Bank confirmed in writing that "Ms. Patricia Mosley White deposited checks made payable Ms. Lida Green into an account that Ms. Patricia Mosley White is a signer on."

47.     Table 1, below, shows details of the forged checks that have so far been discovered. Ms. Green did not sign or endorse any of these checks. She received no money from these checks.

**Table 1: Details of So-Far-Discovered Checks Stolen from Ms. Lida Green**

| Check Date | Company | Amount | Endorsement |
|---|---|---|---|
| 2/28/2011 | El Paso E&P Company, L.P. | $117.27 | Lida Green |
| 3/31/2011 | El Paso E&P Company, L.P. | $110.65 | Lida Mosely Green<br>Patricia M White |
| 8/31/2011 | El Paso E&P Company, L.P. | $136.21 | Lida Green [unint.] Mosley White |
| 10/31/2011 | El Paso E&P Company, L.P. | $140.36 | Lida Green<br>P. Mosely White |
| 1/31/2012 | El Paso E&P Company, L.P. | $115.85 | Lida Green<br>Patricia Mosely White |
| 4/30/2012 | El Paso E&P Company, L.P. | $166.55 | Lida M. Green<br>FOR DEPOSIT ONLY<br>KICKAPOO NATION LLC<br>DBA KICKAPOO CORNER |
| 12/31/2012 | El Paso E&P Company, L.P. | $148.53 | Lida M Green |
| 4/30/2013 | El Paso E&P Company, L.P. | $134.38 | Lida M Green<br>Patricia Mosely White |
| 5/30/2013 | El Paso E&P Company, L.P. | $140.84 | Lida Green<br>P. White |
| 10/31/2013 | El Paso E&P Company, L.P. | $101.16 | Lida M. Green<br>Patricia Mosely White |
| 12/10/2014 | Indigo | $7.42 | Lida Green |
| 12/31/2015 | Indigo | $39.99 | Lida Green |
| 12/15/2016 | Indigo | $23.75 | *Unknown* |
| 10/31/2017 | Indigo | $21.51 | Unknown |

48.     On information and belief, Abel Mosley knew about and approved of the theft of these checks.

49.     Figure 1 below, is an example of the forgery of Lida Green's name, along with Patricia

White's name.

> **Figure 1:** An example of one of the checks a forged signature of Lida Green on the endorsement line, along with Patricia White's name. This check never made it to Lida Green.



50.    Corroborating this is the fact that Pat White also stole money from Dwight Mosley. As shown below, Pat White has been taking and depositing checks made out to Dwight, and not giving him the money. He received no share of the timber proceeds, nor has he received a year-end check in the last four years.

**Table 2: Details of So-Far-Discovered Checks Stolen from Dwight Mosley**

| Check Date | Company | Amount | Endorsement |
|---|---|---|---|
| 10/31/2011 | El Paso E&P Company, L.P. | $140.37 | D. Mosley<br>P. Mosley White |
| 12/31/2012 | El Paso E&P Company, L.P. | $148.51 | Dwight J. Mosley |

| 10/31/2013 | El Paso E&P Company, L.P. | $101.13 | D. Mosley Patricia Mosley White |
|---|---|---|---|

**Figure 2:**    An example of one of the checks with a forged signature of Dwight Mosley, and also a signature of Pat White. This money never made it to Dwight Mosley.



51.    On November 16, 2018, Plaintiff's counsel brought these issues to Ms. White's attention via a letter, and requested an accounting per Louisiana and Texas law. Ms. White did not respond.

52.    On multiple occasions, Plaintiff's counsel contacted Defendants and their counsel, to attempt to get to the bottom of this.

53.    Plaintiff's counsel indicated that "if there is an innocent explanation," that "we are open and ready to hear it."

54.    Defendants never provided any explanation whatsoever for why they were taking Ms. Green's checks.

**C.      The March 2019 Annual Meeting**

55.      On March 23, 2019, the LLC held its annual meeting in Gloster, Louisiana.

56.      Pat White and Abel Mosley are officers of the LLC, and Abel ran the meeting.

57.      Plaintiff sent her counsel as proxy to the meeting.

58.      Plaintiff's counsel tried to bring up the discovered misconduct and this proposed lawsuit at the meeting, but Abel Mosley would not let him speak.

59.      Then Abel Mosley took the meeting into closed session, excluding Plaintiff's counsel.

60.      During that closed session, Abel Mosley said that the proposed lawsuit has "nothing to do" with the LLC.

61.      But then, in open session, he suggested to the full membership that they resume making annual contributions to the LLC to pay for litigation.

62.      Also at the March 23, 2019, Annual Meeting, Plaintiff called for a vote to remove Abel and Pat as Managers.

63.      Plaintiff has an absolute right to call for such a vote.

64.      The LLC's Operating Agreement at Section V(5) says "The Members, at any time and from time to time and for any reason, may remove any member of the Management Committee then acting" and Section V(2)(l) says "The Members may, at any time, remove any Manager, with or without cause, by the affirmative vote of a majority of all the votes entitled to be cast on the matter."

65.      But Abel, who was chairing the meeting, did not allow such a vote.

66.      Nor did he allow Plaintiff to move to add any items to the Annual Meeting agenda.

67.      At the meeting, Richard Hiller, counsel for the LLC, suggested that Plaintiff send him any questions, and perhaps the matter could be resolved amicably.

68.      On March 24, 2019, Plaintiff sent those questions to Mr. Hiller.

69.      Neither Defendants nor Mr. Hiller answered any of the questions.

**D.      Defendants engage in a retaliatory eviction of Ms. Green.**

70.      Plaintiff lives on land owned by the family estate.

71.      On April 29, 2019, Pat White reached out to Plaintiff's counsel to ask "set up a meeting" to discuss Plaintiff's concerns about the management of the family corporations.

72.      That same day, Pat White and Abel Mosley caused a handwritten "eviction notice" to be posted on Plaintiff's door.

73.      Abel Mosley was personally present when the eviction notice was posted.

74.      The document was styled as a "eviction notice," even though no Defendant owns the land on which Plaintiff lives, nor does Dayton Mosley, the person listed on the notice as "homeowner".

75.      The land belongs to the estate, and a previous court proceeding established that Plaintiff had a right to live there because she is a beneficiary of the estate.

76.      Later on April 29, 2019, Plaintiff's counsel responded to Ms. White, saying that he would "be glad to discuss" the concerns about the management of the family corporations, but that in "order to create the space for that conversation, however, you will need to stop all efforts to evict Ms. Green."

77.      Ms. White did not respond.

78.      On May 6, 2019, Defendants caused eviction proceedings to be commenced against Plaintiff in DeSoto Parish Justice of the Peace Court.

**E.      Self-Dealing and Use of Corporate Funds for Personal Use**

79.      Defendants have spent Family Entity money on trips to Austin, Memphis, a beach trip to the Texas coast, and Missouri, and have spent thousands on liquor and food.

80.      For example, in July 2016, Pat or Abel spent $499.18 at an Embassy Suites in Saint Charles, Missouri.In September 2016, Pat or Abel spent $135 at The Oasis, in Austin, Texas.

81.      In April 2017, Pat or Abel spent more than $550 at a Homewood Suites and the Blues City Cafe in Memphis, Tennessee.

82.     In November 2018, Pat or Abel spent $43.20 at Surfside Liquor in the beach town of Freeport, Texas.

83.     Additionally, Pat or Abel have spent thousands of dollars at Sam's Club and Walmart.

84.     Pat and Abel have spent other Family Entity funds for personal use.

## V.     CLAIMS FOR RELIEF

### Count One – Theft / Conversion
### (Pat White and Abel Mosley)

85.     Plaintiff realleges and incorporates each and every foregoing and following paragraph.

86.     Defendants caused checks to be taken from Plaintiff.

87.     Defendants had no right to the checks made out to Lida Green.

88.     Defendants stole money from and converted the property of Lida Green when they diverted checks made out to her.

### Count Two – Fraud
### (Pat White and Abel Mosley)

89.     Plaintiff realleges and incorporates each and every foregoing and following paragraph.

90.     Fraud is a misrepresentation or suppression of the truth, including through silence or inaction, intentionally made to obtain an unjust advantage or cause a loss to another. La. Civ. Code art. 1953.

91.     By forging and causing to be forged Lida Green's name on check endorsements, Defendants misrepresented the truth.

92.     They did so to cause a loss to Plaintiff, and an enrichment to themselves.

93.     Furthermore, Defendants have caused to have the LLC's listed domicile be 456 E. 72nd St., Shreveport, LA.

94.     But there are no records of the LLC at that location, nor does anyone representing the LLC live or work there.

95.     Plaintiff has asked for the location of the LLC's records, and Defendants have refused to

provide it.

96.     As such, Plaintiff has been unable to inspect the records as is her right per R.S.12:1319.

97.     Furthermore, Abel Mosley obtained a fraudulent signature for Plaintiff on a power of attorney dated December 24, 1990.

98.     Mr. Mosley had a third-party sign Plaintiff's name.

99.     As recently as this year, Abel Mosley has represented to third parties that he has power of attorney for Plaintiff.

100.    Mr. Mosley has no power of attorney for Plaintiff.

101.    Mr. Mosley never had power of attorney for Plaintiff.

### Count Three – Unjust Enrichment
### (Pat White and Abel Mosley)

102.    Plaintiff realleges and incorporates each and every foregoing and following paragraph.

103.    Defendants unjustly enriched themselves when they forged or caused to be forged Lida Green's signature on check endorsement lines, and deposited the money into bank accounts they controlled.

### Count Four – Breach of Fiduciary Duty and Operating Agreement
### (All Defendants)

104.    Plaintiff realleges and incorporates each and every foregoing and following paragraph.

105.    As officers and managers of the Family Entities, Defendants owe a fiduciary duty to Plaintiff.

106.    Defendants breached that fiduciary duty when they diverted checks made out to Lida Green.

107.    Defendants also breached that fiduciary duty when they failed to carry out the tasks required by the Amended Operating Agreement of the Lizzie and Charlie Mosley, L.L.C. (dated July 30, 2005 and November 10, 2007),

108.    For example, Defendants have failed to keep complete and accurate books and records of

the LLC.

109.     Also, Defendants have required exorbitant sums for copying of the LLC's records, asking for as much as $5 per page.

110.     Also, on November 11, 2018, Ms. Green requested a formal accounting of the Family Corporations per La. R.S. 12:1319(B)(3) and Texas law.

111.     Defendants refused to conduct a formal accounting despite there being good cause.

112.     Also, Section VIII(4) of the LLC Operating Agreement provides that the management committee has to send each member within 75 days after the end of the taxable year the following: (i) an Annual Financial Report; (ii) a report summarizing the fees and remunerations paid; (iii) tax information.

113.     The LLC operates on a calendar tax year.

114.     But Defendants did not provide any of the documents required by Section VIII(4) within 75 days of the end of 2018, despite repeated requests by Plaintiff.

115.     Also, the Operating Agreement at Section V(5) says "The Members, at any time and from time to time and for any reason, may remove any member of the Management Committee then acting" and Section V(2)(l) says "The Members may, at any time, remove any Manager, with or without cause, by the affirmative vote of a majority of all the votes entitled to be cast on the matter"?

116.     At the March 23, 2019, Annual Meeting Plaintiff called for a vote to remove Abel and Pat as Managers.

117.     Abel Mosley, who was chairing the meeting, would not allow such a vote.

118.     Nor would he allow Plaintiff to move to add any items to the Annual Meeting agenda.

119.     Also, on information and belief, there was never a proper election of Abel and Pat as Managers of their family group.

120.     Defendants do not count for quorum; they merely "presume" it based on an eye-ball estimate of the members present. But quorum is defined by a percentage of the "total membership

interest," not a head-count. (Operating Agreement Section V(6)(a)). Accordingly, with no count of quorum, there can be no assurance that any measures passed at a meeting were valid.

121.    According to Operating Agreement, profits from the LLC shall be distributed in proportion to the percentage of the LLC owned by a member.

122.    But that is not how Pat and Abel have made distributions.

123.    For example, Charley Mosley received the same amount as Abel Mosley in 2012, even though he owns more than 18 times as much of the LLC as Abel.

124.    Dwight Mosley received half as much as Abel Mosley in 2012, even though he owns just as much as Abel.

125.    And in 2013, Dwight did not receive anything at all.

126.    Defendants have not managed the Family Entities' affairs as they should have.

127.    Defendants have not kept records for the Family Entities as they should have.


### Count Five – Breach of Mandate Obligations
### (Abel Mosley)

128.    Plaintiffs reallege and incorporate each and every foregoing and following paragraph.

129.    Article 3003 of Louisiana's Civil Code provides that: "At the request of the principal, or when the circumstances so require, the mandatary is bound to provide information and render an account of his performance of the mandate."

130.    Abel Mosley purports to have had a power of mandate for Ms. Green.

131.    In correspondence, including the March 24, 2019 letter, Ms. Green requested from Abel Mosley an account of his performance of the mandate.

132.    Abel Mosley never responded to the request, nor provided an account.

### Count Six – Demand for an Accounting
### (All Defendants)

133.    Plaintiffs reallege and incorporate each and every foregoing and following paragraph.

134.    In a letter dated November 16, 2018, Plaintiff alerted the Corporation's representative (Ms. White) that someone had been intercepting Ms. Green's checks and depositing them into a JP Morgan Chase Bank account, using forged endorsements.

135.    In that letter, Plaintiff asked for a formal accounting of the Corporation, citing *Yeaman v. Galveston City Co.*, 173 S.W. 489 (Tex. App. 1911).

136.    Defendants did not respond to the request.

137.    On multiple occasions, Plaintiff asked whether there was an innocent explanation of why Pat White was taking and depositing Ms. Green's checks.

138.    No explanation was ever provided.

139.    Furthermore, the State of Texas now lists that the Corporation's "Right to Transact Business in Texas" is "FORFEITED."[1]

140.    For these reasons, and because of all the other discrepancies described in this Complaint, Plaintiff requests a formal accounting of the Corporation.

## Count Seven – Negligent and/or Intentional Infliction of Emotional Distress
### (Ms. White and Mr. Mosley)

141.    Plaintiffs reallege and incorporate each and every foregoing and following paragraph.

142.    In May 2019, Defendants caused eviction proceedings to be initiated against Plaintiff from her long-time home.

143.    But Defendants do not own that parcel of land that Plaintiff lives on. Nor does Dayton Mosley, in whose name the eviction proceeding was brought. Instead, the land is owned by the family estate.

144.    Defendants knew this, because they had attempted once before to evict Plaintiff, and failed because Plaintiff has an equal claim to occupy the land.

145.    But knowing that it was wrongful, Defendants sought again to evict Plaintiff in May 2019

---

[1] https://mycpa.cpa.state.tx.us/coa/coaSearchBtn

in retaliation for her investigation into their mismanagement and fraud.

146.     Thus, Defendants sought to evict an old, sick woman, from land that she has the right to live on, in retaliation for her exposing their misconduct.

147.     This conduct was extreme and outrageous, and was committed with Defendants knowing that the emotional distress suffered by Plaintiff would be severe.

148.     Defendants acted with at least negligence with regard to these acts.

149.     And Defendants desired or acted with recklessness to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct.

### Count Eight – Violation of Rights Under Louisiana Unfair Trade Practices Act
### (Ms. White and Mr. Mosley)

150.     Plaintiffs reallege and incorporate each and every foregoing and following paragraph.

151.     Unfair or deceptive acts in commerce are illegal under the Louisiana Unfair Trade Practices Act. LA RS 51:1401 *et seq.* Unlawful conduct under the statute includes conduct that involves "fraud, misrepresentation, deception, breach of fiduciary duty, or other unethical conduct." *Tyler v. Rapid Cash, LLC*, 40,656 (La. App. 2 Cir. 5/17/06), 930 So. 2d 1135, 1140, quoting *A & W Sheet Metal, Inc. v. Berg Mechanical, Inc.,* 26,799 (La.App.2d Cir.4/5/95), 653 So.2d 158.

152.     Here, Defendants engaged in acts, as described above, which constitute breaches of fiduciary duty in commerce.

153.     For example, they sold natural resource rights to third parties, and then stole Plaintiff's share of the proceeds.

154.     They posted a false address for the LLC, preventing Plaintiff from inspecting the records.

155.     Knowingly engaging in unfair or deceptive practice subjects one to treble damages, as well as attorney's fees and costs. La. R.S. 51:1409.

### Count Nine - State Law Direct Action Claim
### (ABC Insurance Companies 1-10)

156.     Plaintiffs reallege and incorporate each and every foregoing and following paragraph.

157.     Defendant ABC Insurance Companies 1-10, upon information and belief, have issued and/or currently have in effect one or more policies of insurance covering one or more of the Defendants named herein. For valuable consideration received, these policies obligated Defendant ABC Insurance Companies 1-10, jointly and/or severally, to pay on behalf of their insured Defendant any sums the insured Defendant may become obligated to pay to Plaintiff or to indemnify their insured Defendant for any sums the insured Defendant may become obligated to pay Plaintiff.

158.     By reason of their illegal acts, Defendants are liable to Plaintiff for all damages and injuries. Upon information and belief, Defendant ABC Insurance Companies 1-10 are contractually obligated to pay these sums on behalf of the insured Defendant.

159.      Upon information and belief, Defendant ABC Insurance Companies are liable to Plaintiffs for any and all damages incurred by reason of the insured Defendant' acts, up to their policy limits, notwithstanding the fact that the insured Defendant may themselves be able to assert claims of privilege or immunity from liability.

160.     Under Louisiana Revised Statute § 22:655(B), Plaintiff brings a direct action against Defendant ABC Insurance Companies 1-10 to recover any and all sums they are obligated to pay Plaintiff on behalf of their insureds or to indemnify their insureds.

## II.     <u>RELIEF REQUESTED</u>

161.     The Plaintiff requests a trial by jury.

162.     Wherefore Plaintiff requests judgment be entered against Defendants and that the Court grant the following:

a.   Declaratory relief;

b.   Judgment against Defendants for Plaintiff's asserted causes of action;

c.   Award of compensatory damages;

d.   Award of special damages;

e.   Award costs and attorney's fees;

f.  Injunctive relief (including an accounting per Texas law and La. R.S. 12:1319(B)(3), and an accounting of mandate per Article 3003 of Louisiana's Civil Code);

g.  Interest;

h.  Order such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

LIDA GREEN, by and through her counsel,

/s/ William Most_____
WILLIAM MOST
La. Bar No. 36914
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
T: (504) 509-5023
Email: williammost@gmail.com