UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| LIDA MOSLEY GREEN | CIVIL ACTION NO. 19-607 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| PATRICIA MOSLEY WHITE, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

On September 30, 2020, this Court denied a motion to dismiss filed by Defendants, Patricia Mosley White ("White"), Abel Mosley, and the Charley & Ether Mosley Corporation ("the Corporation") (collectively, "Defendants"), without prejudice to the right to refile. Record Document 74. Because of questions concerning whether the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, the Court ordered Plaintiffs, Lida Mosley Green[1] ("Green") and Dwight Mosley (collectively, "Plaintiffs"), and Defendants to file "summary judgment-type evidence" regarding the amount in controversy to determine if Plaintiffs' claims exceed $75,000.00. *Id.* Plaintiffs filed a memorandum in support. [Record Document 75]. Defendants filed a memorandum in opposition. [Record Document 81]. For the reasons discussed below, Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE** for a lack of subject matter jurisdiction.

## BACKGROUND

This case involves a dispute between family members over profits derived from the use of inherited family property for oil and timber resources, the alleged mismanagement of two corporations, and the alleged mistreatment of Green. Record Document 70. Plaintiffs state that they

---

[1] Green is recently deceased; Plaintiffs' counsel intends to substitute a party. Record Document 83.

1

own a percentage of two corporations ("the Family Entities") that have control over land belonging to the Mosley family, of which they are members, and that they receive periodic checks for their share of the profits from the use of the land. *Id.* ¶s 1–3, 18. In 2004, the Mosley family established the first of these corporations, the Lizzie & Charlie Mosley, L.L.C. ("LLC"),[2] to consolidate their interests in the inherited land. Record Documents 70, p. 3 & 71-1, p. 4. In 2011, a subset of the Mosley family, which included Plaintiffs, White, and Abel Mosley, created the Corporation to manage their profits derived from the land. Record Documents 70, pp. 3–4 & 71-1, p. 4. Plaintiffs assert that the Family Entities are managed by White and Abel Mosley, their relatives. Record Document 70, ¶ 35.

Plaintiffs allege that White would collect the royalty checks issued by oil and gas companies, forge shareholders' signatures on the checks, and deposit the money into the Corporation's bank account. Record Documents 70, pp. 4–8 & 71-1, pp. 4–5. After the money had been collected, White would issue some of it to the shareholders of the Corporation as distributions. Record Documents 70, ¶ 56 & 71-1, pp. 4–5. However, Plaintiffs aver that less than half of the Corporation's income is returned as distributions to the shareholders. Record Document 75, pp. 2–3. Instead of paying shareholders the full amount, Plaintiffs accuse White and Abel Mosley of taking the Corporation's money and spending it on unauthorized personal expenses, such as family trips, undocumented reimbursements, vacations, family reunions, food and alcohol, and personal donations. *Id.* at 3. Additionally, Plaintiffs claim that all shareholders of the Corporation are to receive equal shares; however, White and Abel Mosley would issue themselves unauthorized extra shares as payment for running the Family Entities. *Id.* at 2. Plaintiffs state that they now seek

---

[2] The LLC is not a party to this litigation.

"compensation and accountability for Defendants' theft, fraud, and breaches of fiduciary duty." Record Document 70, ¶ 8.

In addition to the claims about making improper distributions, Plaintiffs allege that "[a]ll Defendants" have breached the operating agreement of the LLC by failing to carry out tasks it requires. *Id.* at 12. Plaintiffs claim that Abel Mosley does not establish a quorum for voting at meetings and refused to consider a motion submitted by a proxy of Green that called to have White and Abel Mosley removed from their management positions. *Id.* ¶s 120–23, 125. Plaintiffs blame White and Abel Mosley for defrauding the shareholders by posting a false address of the LLC, which prevented Plaintiffs from inspecting the records. *Id.* ¶ 151. Further, Plaintiffs accuse Defendants of failing to keep accurate books and records of the LLC and the Corporation, which Defendants have conceded is true. Record Documents 70, ¶ 132 & 73, p. 2. Plaintiffs argue that their claims for breach of fiduciary duty and fraud trigger the Louisiana Unfair Trade Practices Act ("LUTPA"), which allows for the collection of attorney's fees and costs. Record Document 70, p. 15.

Green also accuses White and Abel Mosley of causing Dayton Mosley, a non-party to this case and a Louisiana resident, to initiate eviction proceedings against Green. *Id.* at 14. Green argues that her eviction was "in retaliation for her investigation into [White's and Abel Mosley's] mismanagement and fraud." *Id.* ¶ 142. Green argues that this retaliatory eviction supports a claim for intentional infliction of emotional distress or, alternatively, negligent infliction of emotional distress. *Id.* at 14–15.

The complaint alleges several causes of action. Plaintiffs claim that White and Mosely are liable to them for theft/conversion, fraud, unjust enrichment, breach of fiduciary duty and operating agreement, negligent and/or intentional infliction of emotional distress, and violations of LUTPA.

3

*Id.* at 10–15. Green also accuses Abel Mosley of breaching his mandate obligations. *Id.* at 14. Plaintiffs seek declaratory relief, compensatory damages, special damages, court costs and attorney's fees, interest, and injunctive relief. *Id.* at 15–16.

## LAW & ANALYSIS

### I. Subject Matter Jurisdiction

"As a court of limited jurisdiction, a federal court must affirmatively ascertain subject-matter jurisdiction before adjudicating a suit. A complaint should be dismissed for lack of subject-matter jurisdiction where 'it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction.'" *Sawyer v. Wright*, No. 11-CV-50676, 2012 WL 718493, at *1 (5th Cir. Mar. 7, 2012) (quoting *Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009)). The party seeking to invoke jurisdiction, Plaintiffs in this case, constantly bears the burden of proof regarding its existence. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted).

There are two main types of federal subject matter jurisdiction: federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs invoked this Court's jurisdiction exclusively through diversity jurisdiction, which requires complete diversity between the parties and the amount in controversy to exceed $75,000.00. 28 U.S.C. § 1332(a). There is no dispute as to the diversity of the parties at this time; instead, the sole issue before the Court is the amount in controversy. In Plaintiffs' memorandum in support of the amount in controversy, they detail three categories of damages: emotional distress damages, attorney's fees and costs, and damages associated with corporate malfeasance. Record Document

75. From these three categories, Plaintiffs allege that the amount in controversy totals about $233,138.60.[3] *Id.* at 8. The United States Supreme Court has stated that

> [t]he rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.

*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–90 (1938). Applying the principles detailed above, Plaintiffs have not carried their burden of establishing that their claims exceed $75,000.00, and as such, they have failed to establish the jurisdiction of this Court. The Court will address each category of damages in turn.

### A. Negligent/Intentional Infliction of Emotional Distress

Green claims that White and Abel Mosley engaged in a retaliatory eviction that amounted to intentional infliction of emotional distress ("IIED") or, alternatively, negligent infliction of emotional distress ("NIED") (collectively, "N/IIED").[4] Green claims that Defendants are liable to

---

[3] Plaintiffs arrived at this number by aggregating the three categories. Plaintiffs seek $63,435.00 for corporate malfeasance, $50,953.60 for attorney's fees and costs, and $118,750.00 for emotional distress damages for the eviction of Green. Record Document 75, p. 8. Plaintiffs assert that even if the Court takes away the emotional distress damages, the amount in controversy still is $114,388.60. *Id.* The Court need not decide whether aggregation is appropriate in this case.

[4] Green describes this cause of action as one for N/IIED in her complaint. Record Document 70, p. 14. However, in the memorandum in support of the amount in controversy, Green makes no reference to N/IIED and cites a sexual harassment case in support of the amount in controversy. Record Document 75, pp. 5–7. To the extent Green is trying to stylize the cause of action as something other than N/IIED, the Court declines to consider such argument in the context of this supplemental briefing.

her for N/IIED because they caused her to be wrongfully evicted from her home in May of 2019 "in retaliation for her investigation into their mismanagement and fraud." Record Document 70, pp. 14–15. According to Green, Defendants directed Dayton Mosley, who is not a party to this case, to start eviction proceedings to punish Green for investigating their alleged corporate malfeasance and to obtain leverage in the present suit. Record Document 75, pp. 5–7. Defendants counter that, even taking Green's claims as true, Defendants' conduct—instructing someone to obtain an order of eviction through the legal process—cannot be considered extreme and outrageous to support a claim for N/IIED. Record Document 81, p. 4. The Court agrees that Green has no reasonable possibility of recovery for N/IIED.

    i.    <u>Intentional Infliction of Emotional Distress</u>

In order to recover for IIED in Louisiana, a plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). The conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* The Fifth Circuit has observed that "Louisiana courts . . . have set a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that 'courts require truly outrageous conduct before allowing a claim . . . even to be presented to a jury.'" *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 756–57 (5th Cir. 2001) (quoting *Nicholas v. Allstate Ins. Co.*, 1999-2522, p. 10 (La. 8/31/00); 765 So. 2d 1017, 1024–25).

The Court agrees with Defendants that Green does not set forth a cognizable claim for IIED. Green's complaint states that the eviction proceedings in this case were brought by Dayton Mosley, and she provides no legal authority explaining why Defendants can be held liable for Dayton Mosley's actions.[5] *See* Record Documents 70, pp. 14–15 & 75. Put simply, instructing someone to use the legal process to obtain an order of eviction does not suffice to give rise to an IIED claim. *See Glass v. Finley*, No. 3:19-CV-1216, 2020 WL 741826, at *10 (W.D. La. Jan. 17, 2020) ("Filing a lawsuit or resort to judicial process does not suffice to support an IIED claim.") (citing *Bordelon v. Wells Fargo Fin. La., LLC*, No. 18-CV-2563, 2018 WL 3587690, at *8 (E.D. La. July 26, 2018) & cases within *Bordelon*). Using the legal process—and by extension, directing someone to use the legal process— "is embraced in this and most civilized communities and that, regardless of motive, the alleged conduct itself simply does not rise to the level of extreme and outrageous." *Bordelon*, 2018 WL 3587690, at *8 (internal quotation marks and citation omitted). Although the alleged conduct of White and Abel Mosley may have been vindictive, not every unpleasantry gives rise to a cause of action. As such, the Court finds that Green's complaint does not support a claim for IIED.

---

[5] Previously, in Green's memorandum in opposition to a motion to dismiss [Record Document 38], Green cited to the case *Schexnider v. Schexnider*, No. 6:11-CV-2148, 2014 WL 2434482 (W.D. La. May 28, 2014), in support of an eviction supporting an IIED claim. However, *Schexnider* is easily distinguishable. In *Schexnider*, plaintiffs brought multiple claims including an IIED claim against several defendants for causing them to be removed from their residence by police. *Id.* at *1. One of the defendants filed a motion for summary judgment, and his sole argument as to the IIED claim was that it should be dismissed because "he was neither present, nor involved" in the plaintiffs' removal. *Id.* at *4. The court denied the motion because the plaintiffs alleged a genuine issue of material fact as to whether the defendant was involved in the police removing the plaintiffs. *Id.* Thus, *Schexnider* fails to address Defendants' argument that their alleged involvement in the eviction of Green did not constitute conduct that was extreme and outrageous enough to give rise to an IIED claim. Further, *Schexnider* did not involve an eviction through the legal process, whereas Dayton Mosley, in the present case, filed formal eviction proceedings.

7

      ii.      <u>Negligent Infliction of Emotional Distress</u>

The complaint also makes an effort to allege a claim for NIED by stating that "Defendants acted with at least negligence with regard to these acts." Record Document 70, ¶ 145. Although a claim for NIED is not an independent tort, such a claim is viable under Louisiana Civil Code art. 2315[6] even when not accompanied by physical injury. *See Covington v. Howard*, 49,135, p. 4–5 (La. App. 2 Cir. 8/13/14); 146 So. 3d 933, 937. As such, Plaintiff must prove an underlying negligence claim by showing that Defendants violated some legal duty they owed to Plaintiff and "must meet the heavy burden of proving outrageous conduct by the defendant." *Simmons v. State*, 18-0174, p. 5 (La. App. 4 Cir. 8/29/18); 255 So. 3d 701, 705 (quoting *Succession of Harvey v. Dietzen*, 97-2815, p. 10 (La. App. 4 Cir. 6/24/98); 716 So. 2d 911, 917). Green does not identify what specific duty the Defendants breached when they allegedly "caused eviction proceedings to be initiated against" her. *See* Record Document 70, p. 14.

"Additionally, for those NIED claims unaccompanied by physical injury, recovery is limited to facts constituting special circumstances involving the especial likelihood of real and serious mental distress arising from the particular circumstances." *Covington*, 146 So. 3d at 937 (internal quotation marks & citations omitted). Nothing in Green's complaint or memorandum in support of the amount in controversy articulates any facts that could meet the "heavy burden" of outrageous conduct or any special circumstances showing that serious mental distress would arise from Defendants' conduct. As such, Green's complaint does not support a claim for NIED. Based on the above findings, the N/IIED claims cannot be considered for the amount in controversy.

---

[6] "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315.

8

**B. Attorney's Fees and Costs for Violations of the Louisiana Unfair Trade Practices Act**

Plaintiffs claim that they are entitled to attorney's fees and costs in the amount of $50,953.60.[7] Record Document 75, p. 8. Typically, attorney's fees are not included in the amount in controversy unless authorized through a contract or statute. *See Graham v. Henegar*, 640 F.2d 732, 736 (5th Cir. 1981). Plaintiffs claim that Defendants violated LUTPA by engaging in conduct that "constitute[s] breaches of fiduciary duty in commerce," such as stealing Plaintiffs' shares of the proceeds from the sale of natural resource rights to a third party and providing a false address for the LLC which prevented Plaintiffs from inspecting the records. Record Document 70, p. 15. Further, Plaintiffs accuse Defendants of mismanagement of the LLC and breaching its operating agreement. Record Document 75, p. 5. One of the remedies for violating LUTPA is an award of attorney's fees and costs. La. R.S. § 51:1409(A). Defendants counter that attorney's fees and costs should not be included in the amount in controversy because Plaintiffs do not have standing to assert a claim under LUTPA. Record Document 81, p. 3. Although the Court rejects Defendants' standing argument,[8] it agrees with Defendants that attorney's fees and costs should not be included in the amount in controversy because the factual allegations in Plaintiffs' complaint fall outside of LUTPA's ambit.

---

[7] This ruling does not determine the reasonableness of that amount as it pertains to Green or Dwight Mosley.

[8] Defendants cite to *BABA Lodging, LLC v. Wyndham Worldwide Operations, Inc.*, No. 10-CV-1750, 2012 WL 13041532 (W.D. La. Mar. 19, 2012), in stating that LUTPA standing is limited to individual consumers and direct competitors. Record Document 81, p. 3. However, in a separate case, a court in the Western District reconsidered the *BABA* holding and instead followed the Louisiana Supreme Court plurality opinion, *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10); 35 So. 3d 1053, which expanded standing to any person. *See Caldwell Wholesale Co., L.L.C. v. R.J. Reynolds Tobacco Co.*, No. 17-CV-200, 2018 WL 2209165, at *5–6 (W.D. La. May 11, 2018); *see also Rockwell Automation, Inc. v. Montgomery*, No. 17-CV-415, 2017 WL 2294687, at *2 (W.D. La. May 24, 2017).

LUTPA is a Louisiana statutory scheme designed to curb unfair trade practices and protect consumers. La. R.S. § 51:1401, *et seq.* Section 1405(A) of LUTPA states, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." *Id.* § 1405(A). Section 1409(A) of LUTPA authorizes private lawsuits by anyone who suffers a loss of money or property "as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405." *Id.* § 1409(A). "Although LUTPA is available to plaintiffs other than business competitors and consumers, a plaintiff's burden of proving an unfair or deceptive method, act, or practice on the part of a defendant is not lessened." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633, p. 8 (La. 4/23/10); 35 So. 3d 1053, 1058. LUTPA is broadly written and leaves the courts to determine what constitutes an unfair trade practice on a case-by-case basis. *See id.* at 1059. "The courts have repeatedly held that, under this statute, the plaintiff must show the alleged conduct offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* (internal quotation marks & citations omitted). LUTPA "does not provide an alternate remedy for simple breaches of contract." *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993) (citation omitted).

The legislature's overall purpose in enacting LUTPA demonstrates that Plaintiffs' claims are not the sort that the statute was designed to address. The Louisiana Supreme Court has stated that LUTPA was modeled after the Federal Trade Commission Act, and the goal of both is to "protect consumers and foster competition" by "halting unfair business practices and sanctioning the businesses which commit them, preserving and promoting effective and fair competition, and curbing business practices that lead to a monopoly and unfair restraint of trade within a certain industry." *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co., Inc.*, 2013-1582, p. 22 (La. 5/7/14);

144 So. 3d 1011, 1025. Plaintiffs' claims fall outside of LUTPA's purview because they do not concern unfair competition in a given industry or unfair business practices as defined in Louisiana Revised Statute § 51:1402(10).

In fact, at least one Louisiana court has found that LUTPA does not apply to claims such as Plaintiffs' that involve disputes over profit sharing between members of an entity. In *Guillory v. Broussard*, 2015-953, p. 1 (La. App. 3 Cir. 5/4/16); 190 So. 3d 486, 488, plaintiffs Simone Guillory ("Guillory") and Lamar Lopresto ("Lopresto") brought a shareholder derivative action on behalf of the Sam Broussard Trucking Company, Inc., against defendant Samuel Broussard, Jr. ("Broussard"), the president and majority shareholder of the corporation. The corporation was a family owned business in which four siblings, plaintiffs, defendant, and another sibling, were all shareholders. *Id.* Guillory claimed that Broussard intentionally refused to distribute profits of the corporation to the shareholders in order to coerce the shareholders to dismiss lawsuits against him. *Id.* at 489. The trial court dismissed this claim, finding that it did not constitute an unfair or deceptive trade practice under LUTPA. *Id.*

On appeal, Guillory argued that "'trade' or 'commerce,' as defined in [Louisiana Revised Statute §] 1402(10), includes the 'distribution of any services and any property . . . or thing of value[,]' which . . . includes the distribution of a corporation's profits." *Id.* at 496. The *Guillory* court affirmed the trial court's finding that LUTPA's definition of trade and commerce did not include the failure to distribute profits by a corporation to its shareholder, and therefore "unfair trade practices and unfair consumer protection law do not apply to this situation." *Id.* at 497. The Third Circuit further explained that "[Broussard's] refusal to make distributions of profit annually as agreed in no way affects consumers, nor would the distribution if made foster competition in the marketplace." *Guillory v. Broussard*, 2015-888, p. 18 (La. App. 3 Cir. 5/18/16); 194 So. 3d 764,

779. Likewise, the conduct Plaintiffs allege against Defendants only concerns the internal operations of the Family Entities and "is a matter strictly between" each other. *Id.* Although the conduct may give rise to liability, it cannot give rise to liability under LUTPA, because it similarly does not affect commerce. *See* La. R.S. § 51:1402(10). Furthermore, Plaintiffs concede that "the Corporation has no real 'business' – it just passively receives income from oil and gas exploitation." Record Document 75, p. 3. As such, Plaintiffs' factual allegations do not support a claim under LUTPA. Moreover, Plaintiffs have failed to otherwise show an entitlement to attorney's fees and costs. Therefore, Plaintiffs' claims for attorney's fees and costs cannot be considered for the amount in controversy determination.

### C. Corporate Malfeasance

After taking away the damages for emotional distress and attorney's fees and costs, Plaintiffs are left with damages for the alleged corporate malfeasance of White and Abel Mosley. In total, Plaintiffs have detailed $63,435.00 in damages as it relates to their claims for corporate malfeasance.[9] Record Document 75, p. 8. Assuming *arguendo* that Plaintiffs may aggregate their claims and are entitled to the full amount that they have claimed, their claims fall short of exceeding $75,000.00. Plaintiffs were placed on notice by Defendants' motion to dismiss and the Court's September 30 order that there were questions about the amount in controversy being met. Plaintiffs were given an opportunity to present summary judgment-type evidence to convince the Court that it has subject matter jurisdiction over this matter. After removing the unsupported claims for attorney's fees and N/IIED from the jurisdictional equation, the Court finds that Plaintiffs' claims

---

[9] Plaintiffs seek $37,635.00 for Defendants' unauthorized expenses, $2,423.64 for Defendants' unauthorized extra distributions, $2,676.36 for Abel Mosley claiming the profits, $5,200.00 for White's unaccounted-for cash withdrawal in 2016, $14,000.00 for White's unaccounted-for cash withdrawal in 2017, and $1,500.00 for Dwight Mosley's unpaid distribution in 2018. Record Document 75, p. 8.

plainly do not meet the amount in controversy requirement for diversity jurisdiction. As such, the Court is convinced to a legal certainty that Plaintiffs' claims do not exceed $75,000.00 and should be dismissed without prejudice for a lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiffs' complaint is hereby **DISMISSED WITHOUT PREJUDICE** for a lack of subject matter jurisdiction. Fed. R. Civ. Proc. 12(b)(1) & (h)(3).

A judgment consistent with this Memorandum Ruling will be issued herewith.

**THUS DONE AND SIGNED** this 10th day of February, 2021.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE